UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARKCUS RAYMOND MAY,<br><br>　　　　Petitioner,<br><br>v.<br><br>KEITH YORDY,<br><br>　　　　Respondent. | Case No. 1:16-cv-00278-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

　　　　Petitioner Markcus Raymond May is proceeding on his Petition for Writ of Habeas Corpus. (Dkt. 3.) Respondent has filed a Motion for Summary Dismissal on procedural grounds. (Dkt. 12.) The Motion is now fully briefed (Dkts. 14, 15), and all parties who have appeared have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 10.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

　　　　Having reviewed the record in this matter and having considered the arguments of the parties, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# REVIEW OF MOTION FOR SUMMARY DISMISSAL: STATUTE OF LIMITATIONS GROUNDS

**1. Standard of Law Governing Statute of Limitations**

When a petitioner's compliance with threshold procedural requirements is at issue, a respondent may file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989). Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by the parties. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] 28 U.S.C. § 2244(d)(1)(A). One year means 366 days, for example, from January 1, 2000, to January 1, 2001. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil Procedure 6(a) to AEDPA).

---

[1] Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D).

**MEMORANDUM DECISION AND ORDER - 2**

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period is marked as follows, depending on how far a petitioner pursues his claim:

| **Action Taken** | **Finality Occurs** |
| --- | --- |
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each instance above, "finality" is measured from entry of the final judgment or order, not from a remittitur or mandate, which are mere formalities. *Gonzales v. Thaler*,

132 S.Ct. 641, 653 (2012); *Clay v. United States*, 537 U.S. 522, 529 (2003); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

AEDPA also contains a tolling provision that stops or suspends the one-year limitations period from running during the time in "which a properly filed application for State postconviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). The federal statute of limitations is not tolled between the date of finality on direct appeal and the date the first collateral challenge is filed, because nothing is "pending" during that time. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007).

To warrant tolling, the collateral relief application must be "properly filed," meaning that it conforms to state rules governing conditions to filing, including timeliness. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). A state collateral relief application is considered "pending" under § 2244(d)(2) until "the application has achieved final resolution through the State's post-conviction procedures." *Carey v. Saffold*, 536 U.S. 214, 220 (2002). Whether an application remains "pending" under § 2244(d)(2) depends on the state's interpretation of finality. *See id. at* 223 ("Ordinarily, for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears"); *White v. Klitzkie*, 281 F.3d 920, 924 n.4 (9th Cir. 2002) (it is the state appellate court decision, not the mandate, that signals conclusion of review for § 2244(d)(2) purposes, unless the state has a rule that extends the time when the decision of the state appellate court becomes final).

**MEMORANDUM DECISION AND ORDER - 4**

In Idaho, an appellate case remains pending until a remittitur is issued. *See Cochran v. State*, 984 P.2d 128, 129 (Idaho Ct. App. 1999), and so, for federal purposes, a collateral relief application is deemed "pending" through the date of the remittitur. *See Jefferson v. Budge*, 419 F.3d 1013, 1015 n.2 (9th Cir. 2005). "Pending" does not include the time period for filing a petition for writ of certiorari before the United States Supreme Court to challenge denial of a collateral review petition. *Lawrence v. Florida*, 549 U.S. 327, 337 (2007). Finally, each time statutory tolling ends, the statute of limitations does not restart at one year, but begins running at the place where it stopped before the post-conviction action was filed.

2. **Background and Discussion of Timeliness**

The Idaho Supreme Court denied Petitioner's petition for review on direct appeal on August 15, 2012. Petitioner's judgment became final 90 days thereafter, on Tuesday, November 13, 2012. Petitioner's one-year federal statute of limitations began running on that day, and continued for 125 days, until Petitioner filed a pro se petition for post-conviction relief on March 18, 2013.[2] His judgment of conviction and sentences were affirmed by the Idaho Court of Appeals. Petitioner filed a petition for review, which was denied by the Idaho Supreme Court on May 7, 2015, with the remittitur issuing the same day.

---

[2] In the analysis section of his Memorandum, Respondent incorrectly asserts that the pro se petition was filed on May 18, 2013, but the clerk of court stamp shows a filing date of March 25, 2013, with a signature date of March 18, 2013 (mailbox rule). Respondent's background section, however, correctly notes the date of the filing was March 18, 2013.

Petitioner's federal statute began running again on May 8, 2015, with 241 days left. It expired on Monday, January 4, 2016. Petitioner filed the Petition in this federal habeas corpus action on June 16, 2016, more than five months too late.

3. **Equitable Tolling**

If a petition is deemed untimely, a federal court can hear the claims if the petitioner can establish that "equitable tolling" should be applied. In *Pace v. DiGuglielmo*, the Supreme Court clarified that, "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." 544 U.S. at 418. In addition, there must be a causal link between the lateness and the extraordinary circumstances. *See Bryant v. Schriro*, 499 F.3d 1056, 1061 (9th Cir. 2007) (holding that a petitioner must show that his untimeliness was caused by an external impediment and not by his own lack of diligence). The petitioner bears the burden of bringing forward facts to establish a basis for equitable tolling. *United States v. Marolf*, 173 F.3d 1213, 1318, n. 3 (9th Cir. 1999).

Petitioner alleges that he was assaulted by another inmate and sent to the Idaho Maximum Security Institution in September 2015. He alleges that his legal work was lost and that the paralegal failed to respond to his request for information. He states: "When I finally got out of max and talked to paralegal she said I was to[o] late but then a friend

told me to file anyways because when my legal work was lost my time was s[tayed] so I am not late." (Dkt. 14, p. 3.)

By September 1, 2015, Petitioner had used a total of 241 days of his 366-day federal statute of limitations, with 125 days remaining. Petitioner has not stated how long he was in the maximum security prison, nor has he shown that he used the prison grievance system to obtain his legal files or report that he had not been able to contact the the prison paralegal.

On this record, the Court finds that Petitioner has not made any showing that he exercised diligence to resolve his lost file issue or lack of access to the prison paralegal or file his federal petition during the remaining 125 days. Petitioner cannot properly blame an external source, the IDOC, for blocking his ability to file a federal petition when Petitioner has not shown that the IDOC was made aware of his lost file or lack of access to a paralegal while in the maximum security unit.

In addition, Petitioner was provided with the standard of law for a showing of equitable tolling in Respondent's Memorandum in support of the Motion for Summary Dismissal. (Dkt. 12-1.) Therefore, Petitioner was put on notice that he was required to show he exercised reasonable diligence to file his federal petition in time. His entirely vague assertion that his file was lost and he could not contact the paralegal during the last one-third of the one-year period is insufficient. The Court concludes that Petitioner is not entitled to equitable tolling.

### 4. Actual Innocence

The United States Supreme Court has determined that there is an "actual innocence" exception to the AEDPA statute of limitations, and that the exception applies where a petitioner meets the rigorous actual innocence standard of *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). "'Actual innocence means factual innocence, and not mere legal insufficiency.'" *Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

To make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Perkins*, 133 S.Ct. at 1933 (quoting *Schlup*, 513 U.S. at 329). This exception is to be applied only in the "extraordinary" or "extremely rare" case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup*, 513 U.S. at 320-21.

Petitioner alleges that he is innocent, even though he pleaded guilty to the offense.[3] As supporting evidence, he asserts:

> I did not aim at anyone and that fact I was 6 to 8 feet from Lambert [the victim] and by his testimony I pointed gun at his chest and he saws shells coming out of gun, but say he was hit in the leg. I think this fact proves I didn't aim at him. Also the neighbor testified that she "saw me aim wildly."

(Dkt. 14, pp. 2-3 (verbatim).)

---

[3] There is no binding precedent showing that the actual innocence exception cannot be applied where a petitioner has pleaded guilty; however, the United States Court of Appeals for the Ninth Circuit has noted that it is "aware of a potential incongruity between the purpose of the actual innocence gateway . . . and its application to cases involving guilty (or no contest) pleas." *Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007). The Court declines Respondent's invitation to break new ground here.

**MEMORANDUM DECISION AND ORDER - 8**

However, at the change-of-plea hearing, Petitioner admitted, "I fired a firearm, and James Lambert got hit in the leg." (State's Lodging A-4, p. 20.) The trial court found that admission sufficient to form the basis for the guilty plea to the aggravated battery charge. (*Id*., p. 22.) At the preliminary hearing, Lambert and the two friends who stood beside him as Petitioner fired the shots testified that Petitioner did, in fact, approach Lambert, say that he had been waiting or looking for Lambert, and then fired shots at Lambert. (State's Lodging A-3.) Another witness testified that Petitioner was angry at Lambert for dating Petitioner's ex-girlfriend, and that she saw Petitioner—wielding a gun and a crow bar—chase Lambert into the ex-girlfriend's house and then saw Petitioner break the window with the gun to enter the house. (*Id*.)

At the post-conviction relief hearing, Petitioner testified that Lambert and his two friends were standing in the middle of the street talking, but that they did not ry to block his car and stop him. He testified that it was his own decision to get out of the car to find out who "Jimmy" was, his ex-girlfriend's new boyfriend. He testified that his intent was to beat up, smash, or attack Jimmy, and that later, his intent was to fire his gun, but not to harm anyone. (State's Lodging C-3.)

Contrarily, in Petitioner's brief before the Idaho Supreme Court in the post-conviction appeal, Petitioner wrote that the "so called vi[c]tims and state['] s witnesses . . . in fact blocked the road with their bodies preventing [Petitioner] from driving thru, stopping him with the inte[]nt on doing harmed." (State's Lodging D-6, p. 6 (verbatim).)

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner also characterized himself as "being detained by the assailants and fearing for his safety." (*Id*.)

Neither here, nor in the state court record, has Petitioner brought forward any evidence corroborating these alternative stories in the face of three witnesses corroborating the victim's story. In any event, Petitioner offers no *new* evidence here that was not available at the time he pleaded guilty. Petitioner simply denies that he *aimed* at the victim, but he does not deny that he held a pistol in his hand, that the pistol discharged, and that the victim was hit in the leg. That is enough to support the aggravated battery charge. *See State v. Billings*, 54 P.3d 470, 471 (Idaho Ct. App. 2002) (though the defendant fired two shotgun shots into the ground next to the victim's feet, intending only to scare them, but some of the pellets ricocheted and struck the victim's body, the "intent" element of aggravated battery was satisfied, because "[c]riminal intent may be inferred from the defendant's actions and surrounding circumstances." Therefore, the Court rejects Petitioner's actual innocence argument as an exception to the statute of limitations bar.

# REVIEW OF MOTION FOR SUMMARY DISMISSAL: PROCEDURAL DEFAULT GROUNDS

## 1. Exhaustion of State Court Remedies

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered "procedurally defaulted." *Id*. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

An attorney's errors that rise to the level of a violation of the Sixth Amendment right to effective assistance of counsel may, under certain circumstances, serve as a cause to excuse the procedural default of other claims. *Murray v. Carrier*, 477 U.S. at 488. However, an allegation of ineffective assistance of counsel will serve as cause to excuse the default of other claims *only* if the ineffective assistance of counsel claim itself is not procedurally defaulted or, if defaulted, Petitioner can show cause and prejudice for the default. *Edwards v. Carpenter*, 529 U.S. 446, 454 (2000). In other words, before a federal court can consider ineffective assistance of counsel as cause to excuse the default of underlying habeas claims, a petitioner generally must have presented the ineffective assistance of counsel claim in a procedurally proper manner to the state courts, such as in a post-conviction relief petition, including through the level of the Idaho Supreme Court.

As to a related but different topic–errors of counsel made on post-conviction review that cause the default of other claims–the general rule on procedural default is that

any errors of a defense attorney during a post-conviction action *cannot* serve as a basis for cause to excuse a petitioner's procedural default of his claims. *See Coleman*, 501 U.S. at 752. This rule arises from the principle that a petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993).

*Martinez v. Ryan*, 566 U.S. 1 (2012), established a limited exception to this general rule. That case held that inadequate assistance of post-conviction review (PCR) counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. To show ineffective assistance of PCR counsel, Petitioner must show that the defaulted ineffective assistance of trial counsel claims are "substantial," meaning that the claims have "some merit." *Id*. at 14. To show that each claim is substantial, Petitioner must show that trial counsel performed deficiently, resulting in prejudice, defined as a reasonable probability of a different outcome at trial. *Id*.; *see Strickland v. Washington*, 466 U.S. 668, 695-96 (1984).

If a petitioner cannot show cause and prejudice for a procedurally defaulted claim, he can still raise the claim if he demonstrates that the court's failure to consider it will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably

resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.

To show a miscarriage of justice, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Where the petitioner pleaded guilty and did not have the evidence in his case evaluated by a jury, he must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). Types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, 340 (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996). The evidence supporting the actual innocence claim must be "newly presented" evidence of actual innocence, meaning that "it was not introduced to the jury at trial"; it need not be "newly discovered," meaning that it could have been available to the defendant during his trial, though it was not presented to the jury. *Griffin v. Johnson*, 350 F.3d 956, 962–63 (9th Cir. 2013).

2. **Discussion of Procedural Default Issue**

   A. *Claim 1*

Claim 1 is that the trial court's refusal to allow him to withdraw his guilty plea before sentencing amounts to error, which the Court construes as a federal due process

claim—so long as it was presented that way to the Idaho Supreme Court. Respondent acknowledges that Petitioner raised a claim regarding withdrawal of his guilty plea on direct appeal, but argues that it was not raised as a federal claim but only as a state law claim under Idaho Criminal Rule 33(c); therefore, Respondent argues, it is procedurally barred in this action. (State's Lodging B-1, pp. 6-11.) Respondent asserts that the claim was brought under Idaho Criminal Rule 33(c), governing the withdrawal of guilty pleas in criminal cases, and not under the Due Process Clause of the United States Constitution.

The standard of law cited by the Idaho Court of Appeals shows that the federal due process issue of whether a guilty plea was made voluntarily, knowingly, and intelligently was included as one of the considerations of whether there was "just reason" to permit the withdrawal of the plea:

> If a plea was not taken in compliance with constitutional due process standards, which require that a guilty plea be made voluntarily, knowingly, and intelligently, then the standard of "just reason" will be established as a matter of law. However, a constitutional defect in the plea is not necessary in order to show a "just reason."

(State's Lodging B-4, p. 3 (citations omitted).) Therefore, the Court concludes that the claim is not procedurally defaulted.

### B. *Claim 2*

Claim 2 is a set of ineffective assistance of trial counsel claims. Respondent argues that these claims were not presented in the petition for review before the Idaho Supreme Court. The facts in common among the post-conviction appellate brief, the petition for

**MEMORANDUM DECISION AND ORDER - 15**

review before the Idaho Supreme Court, and the federal Petition are that counsel coerced the guilty plea and refused to prepare for and defend him at trial. However, neither of Petitioner's two claims asserted in the petition for review is a claim that trial counsel was ineffective for failure to prepare for or defend him at trial, but the failure to prepare or defend is mentioned in the facts section of the brief. The claims themselves are centered on a coerced guilty plea. Nevertheless, because the "prepare and defend" claims were subcomponents of the ineffective assistance of counsel claim regarding the coerced guilty plea, and not stand-alone claims based on other facts, the Court will consider them properly exhausted as subcomponent claims under the Idaho Court of Appeals' res judicata ruling, as the Court will explain.

Petitioner raised on post-conviction review the claim that the trial court wrongfully denied the "motion to withdraw the guilty plea, *including the issues encompassing [the] claims of ineffective assistance of his initial counsel.*" (State's Lodging D-9, emphasis added.) Therefore, the Idaho Court of Appeals held that the ineffective assistance of counsel claim was "barred from relitigation by the doctrine of res judicata." (State's Lodging D-9, p. 6.)

Because the Idaho Court of Appeals determined that the ineffective assistance of counsel claims based upon counsel's performance in advising Petitioner during the guilty plea phase of criminal proceedings already had been fully and fairly litigated and could not be brought again on post-conviction review, this Court likewise must deem it

properly adjudicated in the direct appeal matter. Prior state adjudication is a prerequisite, not a bar, to federal adjudication. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 n. 3 (1991).

## REVIEW OF MOTION TO DISMISS: NONCOGNIZABILITY GROUNDS

Respondent argues that, as discussed in the Court's Initial Review Order (Dkt. 7, p.3), free -standing claims of actual innocence are not cognizable in non-capital habeas cases. *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002). The Court agrees that Respondent has presented a correct statement of the law. Therefore, Claim 3 will be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Even under the extremely liberal construction the Court has applied to Petitioner's pro se filings here and in state court, the Court concludes that Petitioner filed his federal Petition too late, that equitable tolling is inapplicable for lack of diligence, and that Claim 3 is noncognizable. The Court will dismiss the Petition with prejudice on statute of limitations grounds.

## ORDER

**IT IS ORDERED:**

1. Respondent's Motion to Dismiss (Dkt. 12) is GRANTED. The Petition is dismissed with prejudice.

2. If Petitioner did not understand the standard of law for equitable tolling and if he has any documents or other evidence supporting an assertion of diligence during the time he was incarcerated at the maximum security prison, he may file a motion for reconsideration within 28 days after entry of this Order. *See* Fed. R. Civ. P. 59(e).

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: September 13, 2017

Honorable Candy W. Dale
United States Magistrate Judge